Good morning. Good morning, Your Honor. May it please the Court, Brian Morris on behalf of Detrice Garmon. The core issue in this case relates to the application of absolute prosecutorial immunity in the context of claims brought by unindicted third-party witnesses. The District Court and defendants contend that plaintiff's identity as a witness as opposed to a criminal defendant is simply immaterial to the analysis. That is to say, if a criminal defendant would not be able to sue based on the conduct alleged in the complaint, neither could a third party. We submit that this is inconsistent with the admittedly limited case law addressing the issue and ignores the public policy that underlies the granting of absolute immunity in the first instance. What about the sort of paradigm that the Supreme Court uses to describe when we apply absolute immunity, which is to say it's based on the function, not on the person? So if we take that seriously, isn't the function the same, whether it's a witness or a defendant who's suing the prosecutor? Sure. I think the prosecutor performed would be the same in either case. Sure. I do think the court does place an emphasis on the functional approach, but I think in doing so, it also looks to the underlying policy objectives that are advanced by granting absolute immunity. So I think that's in Mitchell, the court emphasizes that the core policy objective of immunity of avoiding vexatious litigation is not something you're going to be concerned about. I think if you look at the Third Circuit and the odd case that we set in our brief, that involves a witness in the court, really emphasizes the fact that this is not a traditional case involving a defendant, but it's a witness. And then they go. In this case, you've got a prosecutor who signed, I can remember the declaration or an affidavit, I think it's a declaration, under penalty of perjury. And that's the kind of thing that a non-professional could have done, right? Yes. And in that regard, I think there's certainly an argument that she's acting as a witness, as I believe the case, and somebody else could also perform that function, that absolute immunity is not going to apply. And that's what, Kalina, Waggie, and Cruz trouble me because it seems like what the prosecutor did here in signing that declaration was not necessarily one that was exclusively involved in the prosecutorial function. Anybody could have signed it if someone else had been in a position to do so, say somebody from the coroner's office or something. Does that govern our analysis on whether the prosecutor, insofar as signing the declaration is concerned, is entitled only to qualified immunity? Absolutely, because I think it relates directly to the function that's being performed by signing the declaration. It is not a prosecutorial function. It is not, in fact, even an investigatory function. It's something, as you emphasized, that anybody could do. And I think further suggesting that it's not appropriate here is the fact that, in this case, when you're dealing with a witness, they don't have the traditional protections that the Supreme Court has emphasized make immunity appropriate. For example, my client was not represented by counsel in connection with this case. In fact, when she raised the fact that her information was released without her consent, without any objection, her son's attorney said, well, I don't represent you. And I think that's precisely... Counsel, if we decide that the issuance of the subpoena itself falls within the prosecutor's classic role as an advocate, and so therefore that's entitled to absolute immunity, do we then tease and separate the affidavit that accompanies the subpoena, or does the analysis, in your view, fall together? Well, I think it doesn't... I don't think the sort of subsequent immune act immunizes the prior un-immune act. So I think, if I recall on Kalina, it wasn't the signing of the document that caused the ultimate injury. It was the fact that, if I recall correctly, a warrant was issued based on the false document that was signed by the prosecutor. So I don't think the fact that, again, the fact that maybe acquiring... So it goes together. So if the affidavit under penalty of perjury is entitled to only qualified immunity, then that analysis has to necessarily flow to the subpoena as well. Is that your position? Yes, I think so. And again, I think that falls from Kalina, because if it wasn't... Again, in these cases, it's never the sort of the signing of the document improperly that actually causes the injury. Isn't that fatal to your position, though? If you agree with my colleague that if the qualified immunity applies to the declaration, it must also apply to the subpoena, then aren't you getting into the prosecutorial function? Because clearly, the issuance of the subpoena would be a normal part of that function. Don't you have to split the two if you're going to be successful in finding that there's qualified immunity? Well, I don't think so, because I think the unlawful conduct is signing the document, and then the injury that flows from that will depend on how the prosecutor uses that affidavit that was signed improperly. So I don't think the fact that just signing the document itself obviously is not really the core injury. But if we conclude, as Judge Welk can point out, the Supreme Court has been really clear that if we look at the function, and if the issuance of the subpoena is a typical prosecutorial function, isn't that the end of your case if you can't separate the declaration? Well Your Honor, I don't think so, because even if I agree with you that you're engaged in a prosecutorial function by acquiring evidence for use at trial, if you're acquiring that guilty of perjury... I'm having trouble following you on that one, because I think you're just, you know, if they're together, and the prosecution would normally issue a subpoena, it wouldn't be done by the coroner, for example, you know, you're just toast. That's an absolute immunity. It's all done. We never get to the underlying truthfulness or falsity of the declaration, do we? I do think you separate them out, but I think the injury... You don't even get to the injury, do you, if there's absolute immunity? True. I do think the signing of the affidavit is not absolutely immune. Well, that was my point. Sorry, I misunderstood. What I'm trying to understand is, my colleague has asked you whether the one follows the other. You said yes, which means, in my mind, that the issuance of the subpoena and the declaration are one and the same, if I understood your answer to Judge Wynn's question. So, that absolute immunity applies to both, because there isn't a commonsensical basis for teasing apart the analysis of the affidavit or the facts stated in the affidavit versus the subpoena. Well, there's three ways it could go. Either both are absolutely immune, because they must go together, or both are qualifiedly immune, because they must go together, or they don't have to go together. And one could be absolutely immune, and the other could be qualifiedly immune. Sure. And I thought your answer to my question was that they've got to go together. Sorry, just let me clarify. I think you absolutely... You have to separate them out to determine, because I do think they're two separate acts. But my only point was, if you were to take the view that actually issuing the subpoena and acquiring the documents were absolutely retroactively immunized prior unimmune acts. Yeah, that's an interesting concept, a novel one, I must point out. But is your final position that the two are separated or separable for purposes of our analysis? In other words, can we view, applying Van de Kamp, the issuance of the subpoena as absolutely immune, while looking at the declaration as qualifiedly immune? Is that your position? Sure, yeah. I do believe they can be separated out. Is that what you want us to do? Do you believe that that's what should be done? Well, I do think the court has to look at the two things separately, because if it doesn't, for example, you're going to, again, as I was trying to point out, you're going to immunize a prior unimmune act, because the prosecution doubles down. The Supreme Court doesn't care about that. What we're really looking at here is, are those two separable? If they're not, then you've got love and marriage and the horse and carriage, and you're toast. No, I definitely think they're separable, and I was just trying to illustrate why I think that's the case. Well, if I understand your answer correctly, you've got to look at it separately for purposes of analyzing whether, for example, the statements containing the affidavit turns this prosecutor's conduct away from the advocate into the role of a complaining witness. But then that's just step number one, right, according to your analysis. So I'm not clear on what your ultimate answer is. Once you examine it separately for purposes of trying to apply Supreme Court precedent, is the ultimate answer the same in terms of whether qualified immunity applies? So in other words, if we decide that the subpoena is entitled to absolute immunity, does that analysis then extend to the affidavit? And on the second choice is, if we decide that the affidavit is entitled to qualified immunity, does that then apply to also the subpoena? I think you can view the two acts as separately. So I think... If they're separate, then what facts allege in the affidavit makes this the role of a complaining witness versus the role of an advocate, the prosecutor? Trying to uncover impeachment evidence as a prosecutor in order to establish and fulfill the prosecutor's burden of demonstrating the elements of the offense. Aren't you cutting it too thin? Well, I think the facts alleged in the affidavit are that my client had been murdered by her own son, which was just simply not true. And that's alleged in the affidavit and also in the letter that went along with the subpoena to Kaiser. And that was obviously, they obviously knew that was the case because my client had executed a limited release of medical records just one day prior to the issuance of that subpoena and the signing of that declaration. Another theory that arises in some of the cases you cite to get around absolute immunity is where the action that was taken was, one, intended to avoid the judicial process. And it's not too clear here what exactly happened, but I wonder if there was an avoidance of the judicial process here. If Kaiser, what, turned the records over to the DA directly and the DA opened them up by herself and used them at trial? Or were they brought into court and unsealed in dramatic fashion by the judge in front of everybody? Or how did this actually happen, if you know? Sure. I think the evasion of the judicial process is because they contended that Kaiser was required to release the documents under mandatory disclosure laws, Kaiser was able to just send the records over to, obviously they sent it to the court, but my client was never made aware of it. Had they went under the different, a different provision in HIPAA, they would have had to have either entered into a protective order, informed my client that the documents were going to be released, and she would have had the opportunity to assert an objection, or to obtain counsel, to try to protect her private information. Because they misrepresented the basis for the request, the judicial process was not able to function because my client was not able to assert. Does the fact that they were sent to the court as opposed to directly to the DA's office make any difference? Or were they? Are you saying that is what happened? Or you're... To be fair, I'm not exactly sure. I know in... Sure. I'm not exactly sure, but I ultimately think the core evasion here is that my client was not able to assert any objection because had they requested the documents under the proper section of the regulation, my client would have been made aware of it. But does that argue in favor of looking at it as absolute immunity because it was part of the subpoena process? It didn't have to go through HIPAA? I'm not sure I'm understanding your question. Normally if a district attorney issues a subpoena and asks for medical records, you don't have any HIPAA requirements involved. They just have to produce them unless there's some reason to object. In this case, there was no request. Your client wasn't notified. There was no HIPAA involvement. The subpoena just went somewhere. And I wonder if that affects the analysis of whether this is absolute or qualifiably immune. I don't think so, Your Honor. And in fact, I think here HIPAA was involved because they cite a HIPAA regulation as the basis for being able to acquire the records in the first instance. And the regulation they cite relates to mandatory reporting laws related to victims of certain crimes. Getting to the issue of evading judicial review, the documents, as I understand it, were sent to the court as they were required to unless the custodian appears personally. And they were sent sealed. The prosecutor opens it with your client having the right to be present when it's opened. Is that right? No, Your Honor. My client was not even made aware of the disclosure because she's a third party. She was not involved in the case. She could have, had she been made aware of the subpoena, had asserted some kind of objection based on privacy or something else. But she was not able to do that because she was never made aware of the request. I'd like to hear your views on what the California Supreme Court would do with the statute, with the state court immunities, considering Sullivan being somewhat at odds with all the subsequent court of appeal cases. But I guess I don't want to take on the vote of all time. No, no, no. We'll give you more time. Go ahead. Ask whatever you'd like. Sure. Well, I think many of the cases since Sullivan that have, in my view, largely ignored it are very hard to discern. I think there's an increasing recognition of that. There have been three recent cases, district courts in the circuit that have taken our view that Section 821.6 applies only to malicious prosecution claims. And that makes perfect sense when you think about the underlying basis for immunity. If you go back to Imbler, the entire basis is we're concerned about people suing prosecutors for malicious prosecution. So it makes sense that that would be elevated to the highest level of protection, whereas other kinds of conduct would be given qualified immunity under the other provision of the California statute.  Good morning, Melissa Rowland, Office of the County Counsel for the County Defendants, the County of Los Angeles, DDA, Michelle Hannessey, and former District Attorney Steve Cooley. If I may, in this case, the plaintiff signed a limited release for her medical records. She was going to be an alibi witness in her son's murder trial that the DA's office was prosecuting. She signs a limited release for documents from January 2008 forward regarding brain surgery. Right, but they gave the whole shebang instead. So she now objects to the subpoena that's issued the next day. And the subpoena was issued to the court. The documents were produced to the court. Is that in the record? Well, if you look at the subpoena that's in the record, it actually tells you, commanded to... It says what they're supposed to do. It says exactly what they're supposed to do. I'm just wondering what they did do. That is my understanding. It's not in the record, but that is my understanding of what happened. We believe that the court directly focused on the function that was at issue here and that absolute prosecutorial immunity was properly granted. The issue is not the harm that the conduct may have caused, but the nature of the conduct for which immunity is granted. And in looking at the function performed by the prosecutor, it is clear that she was evidence in order to obtain evidence for use in the trial. Right, but in actually signing the declaration and stating certain facts, such as the fact that the defendant had killed his mother, is she not acting as a witness like the prosecutor in Kalina was doing in signing a declaration in support of an arrest warrant? I would say no. I believe it was Buckley that indicated that immunity would extend to making false or defamatory statements during or related to a judicial proceeding. What about Kalina? I think the timing of it is crucial. I think the timing of the evidence gathering is crucial in this case to look at whether or not she was performing in her roles as a prosecutor or not. It was after the initiation of the proceedings, the trial was coming up. But if we can separate the subpoena from the declaration, we might agree with you on the subpoena, but in signing a declaration that contained a statement of fact, was she not acting as a witness? I would say no. I would say she was still acting as a prosecutor. Why would you say so? Because once she was subpoenaing the documents for use in the criminal trial, indicated that this person was a witness and that she was prosecuting the case on behalf of the County of Los Angeles against Ms. Garman's son. It seems like a bizarre position though, counsel. I get the function idea, but what you're saying is that a deputy district attorney can say whatever he or she wants to, however false, however outrageous, in getting information and using a subpoena. Can that possibly be right? I am not saying to that extreme, Your Honor. I think that each case is, you look at the facts of each case, and I would not take it to that extreme. Well, in this case, how could she have possibly intended what she did? It was absolutely false. She knew it was absolutely false, did she not? Your Honor, I don't want to speculate. Yeah, well, there's nothing that I've seen in the record that in any way exonerates what she did in terms of the truthfulness of it. You're just saying she's entitled to absolute immunity, but what I'm trying to find out is, is the state of our law, particularly in light of Kalina, that a district attorney in this case can say whatever, however false, however outrageous, however not based on facts, and not have it be qualified as opposed to absolute immunity. I think that if you look at the facts of this case, the timing of it all, when it was done, it was connected to the judicial phase of the criminal process. Well, yeah, connected, sure, that's right, but I get my point. Intimately associated. Clearly, clearly the subpoena was a normal process, but in this case, had there been a death of the son, you could have had, for example, the coroner sign a declaration that the son is dead. Say that was important. In this case, you tied them together, but the reality is it didn't have to be a prosecutor to get the records, right? It could be somebody else. I don't know the answer to that, honestly. In other words, the declaration in this case did not have to come from her. It could have come from somebody else to get those records. I don't know the answer to that, honestly. I don't know if the coroner could subpoena the documents to the court. It doesn't have to be the coroner. I'm just saying a non-judicial officer who is knowledgeable of the facts could have asked for them. Or at least signed the declaration in support of the subpoena. Yeah, exactly, that's what I mean. That is probably accurate, yes. Okay. What do you think about counsel's proposed distinction between absolute immunity against claims by defendants suing, disgruntled defendants suing their prosecutor, versus a difference test being applied for witnesses who aren't as likely to be disgruntled suing their prosecutor, and that the policy concerns of construing the drastic remedy of absolute immunity shouldn't apply to a witness? What do you think of that? This case is a little different in that she's not a true... We have to do the law for all cases. We can't have different laws for different cases. She's not a true disinterested third-party witness, in a sense. I mean, she is upset because this evidence was used to impeach her. She was her son's alibi witness. I think that if we look at the reason why we're applying absolute immunity, it still applies in this case. I mean, there's always a concern that they have no other remedy, that they're not criminal defendants. They can't go to the court and seek a remedy for any improper misconduct. I think in this case it's different because... We always can't, and we have to look at them to see what kind of witness they were, and whose side were they on, and that's how we would determine... Well, I think if you focus on the reasons for absolute immunity and look at the conduct taken in each individual case, which is what the courts have done, I think that's what the analysis is, and the same justifications exist for absolute immunity in this case because we don't want prosecutors worrying about being sued and things of that nature. I want to clarify an earlier answer that you gave to one of my colleagues' questions because you had indicated that even though the prosecutor issues the subpoena, that the application for the issuance of the subpoena can actually be certified to or declared to under penalty of perjury by somebody else? I'm not sure what the real answer to that honestly is. I mean, it is one document, the subpoena and the declaration. It's my understanding that that is something that the prosecutor normally does. I'm not aware of just any other... What does the law allow for? Because I think what we're struggling with is whether it's separable, right? You have a document that's the subpoena that asks for the records, and then you have a declaration that's titled application for subpoena that basically the prosecutor has to lay out the good cause for seeking those documents. It seems to me one way to look at it is that it's indistinguishable, the analysis of the subpoena versus the application that the prosecutor is required to set out the good cause for, that it has to go together. But I thought you were saying, in response to Judge Wilkins' question, that no, that affidavit establishing good cause could actually be certified by somebody else. It's our position that it's all one document. So the only time we have seen it is when it's all one document, the DA's office subpoenas the document, the DA lays out what the foundation is for the request. I'm troubled with how you deal with Kalina in this case, which was pointed out as a United States Supreme Court case. And in that case, where the court did split and said there was qualified, not absolute immunity, they noted that the truth or falsity of the factual statements themselves attached, or what they were talking about, testifying about facts is the function of a witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application, in this case for an arrest warrant, is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required oath or affirmation is a lawyer, the only function that she performs in giving sworn testimony is that of a witness. Now, this case is not an arrest warrant, but it's a subpoena seeking information. What's the difference between what happened here versus what happened in Kalina? Why aren't these two functions separable? As my colleague pointed out, you have to have an application. But in this case, the court made it clear the fact that a lawyer in this prosecutorial function signed it does not mean that it's absolutely immune. It was in the role of a witness, and in this case was the district attorney in this case not a witness, not just acting as a prosecutor. I have to apologize, Your Honor. I am completely blanking on Kalina and the facts of Kalina at this point. Okay. I would just— But that's the case that you've got to successfully distinguish. I know, Your Honor. I apologize. And another aspect of this, even if you're not familiar with Kalina, I don't know if your co-counsel is going to help. I'm just blanking. If you're not familiar with Kalina, let's assume for a moment that what I said is accurate. It is. But how do you cabin what you're talking about? Say there is a way—say there's no way to separate this. Going back to what I said earlier, you could make the most outrageous false statements, and there would be no way to limit it, right, unless you could separate them. Isn't that right? Well, I think that they could raise it. I mean, she had the opportunity to raise it. Her attorney had the opportunity to raise it at the trial and object at that point. But you're saying it's a waiver issue, not what we've been talking about. I don't think she had an attorney. She was a witness. Correct. Her son had an attorney. And he said, I'm not your attorney. Well, that's what counsel said. There's nothing in the record that— It strikes me that this case is harder than Kalina because when you attest to facts that support probable cause and the issuance of a warrant, a witness, that's classic witness testimony. He punched me in the face, or I saw the drive-by shooting, and that was the driver. So that seems different than a lawyer's characterization of whether somebody is a victim or an alibi witness in the case. Could I ask about Sullivan? We don't have an analogous law on that. I mean, if you have more to say to Judge Wynn, once we finish that, I would like to— Can I point out, we had divided up our time. Oh, sorry. Fine.  I apologize. Do you have a question for her before— Whoever wants to talk about Sullivan and the subsequent Cal App cases. Yes, Your Honor. So there is the recent appellate courts do kind of distinguish, do not follow Sullivan because it has applied it to other causes of action other than malicious prosecution. Well, the Court of Appeals don't exactly have the option of not following Sullivan. I understand, Your Honor. But one might argue that that's what they've been doing. That's what they've been doing. And that if the Supreme Court were told that now, they would say, what are you all up to? They have been extending it to other causes of action, such as intentional and fictional emotional distress and other state law causes of action. The Courts of Appeals have. The Courts of Appeals have, yes, Your Honor. But the Supreme Court hasn't indicated whether it likes or not. I think there's no dispute that it definitely applies to malicious prosecution. I think if you examine the claims that come out of this particular lawsuit, we would argue that it's still applicable here because all of her claims do stand from the prosecution of the judicial proceeding in this case. So that would be our argument. They're not malicious prosecution claims. I think she's only got one state law cause of action claim. I can't recall. Do you want to let your colleague— Sure. I apologize. I don't want to create any intra-office friction here, so. I represent Southern California Permanente Medical Group. So we filed a brief. But, you know, I did address these issues in our brief, and I wanted to point out a couple of things. Number one, that we're talking about whether or not there was any sort of constitutional injury and—or federal injury. And starting with that premise, there was no HIPAA—there's no private cause of action for violation of HIPAA. And I just want to point that out, and that was a point raised in our brief. A lot of this conversation had to do with whether or not her privacy rights were violated. The premise of the appellant's brief is that HIPAA was violated. That's not an injury that is compensable. Well, let me ask you this, counsel. As I look at this, the trial court never really got into much of this. It was blown out based upon absolute immunity. How can we decide that portion of the case since the other aspect basically rolled over everything? If we change—if we view this as being split and qualified immunity applied to the declaration, if we send that back to the court, isn't that the time to talk about what you're talking about? Well, no. I mean, there's this concept of harmless error, and you're always looking at that in all proceedings. This is not a criminal proceeding. This is a civil proceeding. Well, there's no prejudice, is my point. There's no prejudice as a result of this ruling. If there's a federal claim, you're in. If there's not a federal claim, you're out. You're out. And as far as the subpoena goes, I mean, this declaration says, I am currently employed by the Los Angeles District Attorney's Office assigned to Los Angeles. And the distinctions that the court is pointing to are not egregious distinctions. I mean, they're not egregious mistakes. I mean, this idea that there's some egregiousness between identifying between a victim and an alibi witness for purposes of a subpoena is not realistic. When Kaiser gets a subpoena like this from the DA, they're going to produce the records. This document is from the District Attorney's Office, and it was authorized under, if we're going to go to HIPAA, it's authorized under HIPAA, 45 CFR 164.512.F12A. And under California law, the attorney who is of record has the absolute authority to sign for a subpoena. That's CCP Section 1985. So there's not an abuse of power, and these sort of misstatements that are contained in this declaration are almost silly. I mean, the issue in this case was a murder. The statute overrides privacy rights when they're subpoenaing the records of the victim. But this wasn't the victim. But that's not the standard. It is. It's the statute. The statute doesn't hinge upon whether or not it was the victim. The statute says whether it's a law enforcement purpose. That's all it says. Well, isn't that the base of what we're talking about in the first place? Correct. Whether this is an absolute immunity because it's a law enforcement purpose or someone acting as a witness. Which is my point. I agree, Your Honor, that when the district attorney issued the subpoena and it was for a law enforcement purpose, the district attorney could have issued the subpoena. You're assuming away the issue. I don't understand. There's a criminal proceeding. The district attorney is a law enforcement officer as a matter of law. That district attorney has the authority to issue subpoenas to witnesses. Subpoena, right. But we're talking about what is attached to that. Well, the attachment is in the role of the district attorney. It says it in explicit language. I am currently employed by the L.A. District Attorney's Office. This was for the purpose of being a prosecutor to get someone subpoenaed to trial. I think we have your point. I think I covered questions by my colleagues. Thank you very much. All right. Thank you. Counsel, we're going to give you a minute. So we're going to give you a minute because I think you wanted to ask some questions. Well, it's just I overrode his last minute. No, no, no, that's fine. We'll give him a minute here because I know he would like to have that. I would. Thank you, Your Honor. Okay. Just a couple of things. There was a reference made to Section 1985 of the Civil Code. That doesn't apply in the context of criminal subpoenas. It's simply just not relevant here. I would also note that this issue of whether my client has sufficiently alleged a constitutional injury for 1983 purposes was never raised below. Kaiser didn't file a brief below. I think that issue should be reserved for the district court given that nobody has raised it to this point. Do you know the answer to the question of whether this application under penalty of perjury could have been executed by somebody else? Your Honor, I'm not 100% sure about that. I'm happy to file any supplemental papers or supplemental cases on that if that would be helpful to the court. Just one other thing I wanted to emphasize that I think got lost in the shuffle, perhaps appropriately so, is that just some of the cases I said in the brief regarding witnesses, the Third Circuit, I think, has spoken very clearly on this, that the court has to look at the policy objectives advanced by immunity, particularly in the context of 1983 actions. And, again, the policy objectives that immunity is seeking to advance are simply not advanced by extending immunity in this context. I think the court also relied on those similar considerations in the Mitchell case. And I would also note the Second Circuit, in denying a defendant's claim on immunity grounds, noted that the witnesses may well have been able to bring those same claims and not have been denied, and that's the Lee case besides. Thank you. The declaration I have is unsigned. Is there a signed declaration in the record? And if there's no signed declaration, does that have any significance that it's unsigned? Your Honor, I'm not 100% sure about that. I do think the fact that it is sent to Kaiser in addition with a letter basically indicating the same facts, and also signed by the district attorney and issued pursuant to the DA's authority, I think that would be sufficient. Okay. Thank you both for your argument. It's a very good argument. Okay. That case just argued is submitted.
judges: M. Smith, Nguyen, Wilken